**Louis VADINO, Appellant,**

v.

**A. VALEY ENGINEERS.**

No. 89–1503.

United States Court of Appeals, Third Circuit.

Argued Nov. 27, 1989.

Decided May 17, 1990.

As Amended May 22, 1990.

Peter A. Buxbaum, Philadelphia, Pa., Elizabeth J. Anderson (argued), Media, Pa., for appellant.

David W. Marston, Mark D. Shepard (argued), Buchanan Ingersoll, P.C., Pittsburgh, Pa., for appellee.

Before SLOVITER and BECKER, Circuit Judges, and LIFLAND, District Judge.[*]

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### Introduction

This appeal in an action filed by an employee against his former employer raises, *inter alia,* a novel issue of the interrelationship between claims made under the Labor Management Relations Act (LMRA) and the Fair Labor Standards Act (FLSA). In one count, filed under section 301 of the LMRA, 29 U.S.C. § 185 (1982), the employee alleged that the employer breached the provisions of the relevant collective bargaining agreement by paying the employee less than that provided for in the agreement, and that the union, which was not sued, breached its duty of fair representation by failing to process his grievance against the employer. In another count, the employee claimed that the alleged underpayments in his regular rate of pay resulted in corresponding underpayments of overtime wages in violation of the FLSA, 29 U.S.C.A. § 207(a) (West Supp. 1989). The employer, in its motion for summary judgment, interposed a number of discrete defenses including LMRA and FLSA statute of limitations defenses and failure to exhaust remedies to which the employee has responded with claims of tolling, excuse, and futility. Despite the com-

plex legal issues presented, the district court, without explanation, granted the defendant employer's motion for summary judgment on both the LMRA and FLSA claims. This appeal followed.

### II.

#### Facts and Procedural History

Louis Vadino, the plaintiff, is the nephew of Lothar Budike, the President and fifty percent shareholder of A. Valey Engineers, Inc. (A. Valey), formed in 1964, and Valey Service and Maintenance, Inc. (Valey Service), formed in 1977. Although both companies are in the business of heating, ventilation and air conditioning service and maintenance, A. Valey is a union company, while Valey Service is a non-union company.[1]

In 1978, Budike, at the request of his sister, Vadino's mother, hired Vadino to work for Valey Service, the non-union company. Budike's other company, A. Valey, which has a collective bargaining contract with Steamfitters Local 420 ("Local 420" or "Union"), had a contract to provide heating, air-conditioning and ventilation in the construction of the Gallery Mall in Philadelphia, Pennsylvania. In March 1979, Budike transferred Vadino to the payroll of A. Valey so that he could work on the Gallery project. Under the Local 420 Collective Bargaining Agreement, a journeyman was defined as a refrigeration and air conditioning mechanic with four years of experience in heating, ventilation or air conditioning service and maintenance, and an apprentice as an individual engaged in learning the trade of a journeyman.[2] Although Vadino was not qualified to enter Local 420 as a journeyman because he had no prior experience with heating, ventilation or air conditioning service and maintenance, Budike

---

1. It appears from Budike's deposition that Valey Service, although not formally dissolved, no longer conducts business.

2. The earliest collective bargaining agreement which the parties include in the record was

effective from July 1, 1982–June 30, 1985, some three years after Vadino was enrolled in Local 420. Neither party suggests that there was any material difference between the definitions in the agreement in the record and those in the agreement in effect when Vadino was enrolled in the Union.

enrolled Vadino and a few former in-house Gallery Mall employees in Local Union 420, and Vadino received a union card indicating that he was "a union member as a metal trades journeyman." App. at 112.[3]

Vadino worked for A. Valey from March 1979 until June 1985. During this time he was paid an hourly rate higher than an apprentice rate but lower than a journeyman's rate. His overtime wages were calculated on the basis of the hourly rate actually paid. According to Vadino, in 1981 or 1982 he became suspicious that he was being paid less than the journeyman's rate and questioned Budike on a couple of occasions during these years. He was told that A. Valey was not doing well and was reassured that he would eventually be paid the journeyman's rate. Vadino became the union shop steward in December 1984 or January 1985. He claims that shortly thereafter, approximately between January and June of 1985, he learned from the Union, in response to his inquiry, the rate of journeyman wages set forth in the collective bargaining agreement. He took no action with respect to his alleged underpayment until June 1985 when he left A. Valey. Vadino claims that thereafter he contacted Budike on numerous occasions from June 1985 through the end of 1986 regarding the alleged underpayment and that Budike repeatedly promised that he would pay him all back wages due after he received money owed to him from the Gallery Mall.[4]

After leaving A. Valey in June 1985, Vadino also "tried to get a lawyer to see if [he] had a legal basis of getting his back pay...." App. at 141. The first lawyer he contacted did not handle labor cases. In late 1985, he contacted a second lawyer who told him that he needed a letter from the Union authorizing him to handle Vadi-

no's action. As a result, Vadino contacted George Parsons, the Local 420 business representative, in December 1985 or January 1986. This was the first time Vadino sought any Union assistance with respect to his alleged underpayment of wages.

Vadino contends that Parsons assured him that he did not need a lawyer because the Union would handle his grievance, and that Parsons informed him that he would check the records regarding his rate of pay and would get back to him. Vadino did not hear from Parsons for a month, contacted him, and was told by Parsons that he had contacted Budike and was waiting to hear from him. Vadino then contacted Parsons on three or four subsequent occasions, each one separated by about a month, and was given a variety of excuses as to why Parsons had not contacted him, including that Parsons was busy, had forgotten, and that Budike was on vacation.

Parsons tells a different story. In his deposition, Parsons claims that after his meeting with Vadino, he contacted Budike, who said that Vadino had never repaid a loan made by A. Valey to Vadino. Parsons then contacted Vadino, explained to him Budike's comments, and was told by Vadino to "forget about that." App. at 47. Parsons claims that he was never again contacted by Vadino regarding this matter, and that he did not regard Vadino's contact as the initiation of a formal complaint, but rather as an inquiry.

Although Vadino acknowledges that he never explicitly requested Parsons to begin the formal arbitration process that was mandated in the collective bargaining agreement,[5] he believed such a request was implicit in his calls for assistance. In May

3. In his deposition, Budike testified that the Union would not guarantee Vadino and the other men a job because of their lack of experience. Consequently, to enroll them in the Union, Budike guaranteed them a job and training for the apprenticeship period, which was four years at that time.

4. We note that Vadino claimed in his amended complaint that he first contacted Budike in 1985 after leaving A. Valey, but his deposition testimony about the contact in 1981 or 1982 referred

to in the text, *supra*, is clear, *see* App. at 175–76, and his brief refers to the appendix pages where he testified to contacts with Budike in 1981 or 1982. *See* Appellant's Brief at 8.

5. Article XIV of the Agreement provides that if the business representative of a local union cannot resolve a dispute between a union member and an employer, "within one (1) week [the dispute] shall be referred to an arbitrator." App. at 222.

of 1986, Vadino again sought redress through the services of a lawyer and, ultimately, in June or July of 1986, he contacted his present counsel.

Vadino filed his complaint in federal court against A. Valey on February 19, 1987, which, as amended,[6] alleges two causes of action. Count One, brought under section 301 of the LMRA, alleges that A. Valey breached the collective bargaining agreement by paying Vadino less than the journeyman's rate. Vadino also avers that the Union breached its duty of fair representation by "maliciously and in bad faith refus[ing] to start ... a grievance" against A. Valey. App. at 3. Count Two alleges, *inter alia*, that A. Valey violated the FLSA by paying him less than one and one-half times his "regular rate" of pay for hours worked in excess of 40 hours per week. Vadino contends that his overtime rate should have been one and one-half times the rate that he was entitled to as a journeyman under the collective bargaining agreement, rather than that which he actually received. Vadino seeks total damages in excess of $66,000, as well as interest, costs and attorneys fees.

A. Valey moved for summary judgment on both causes of action. It contended that the section 301 claim was not filed within six months from the date it accrued as required under *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and hence was time-barred. It also contended that suit was barred because Vadino had not exhausted either the internal grievance procedures set forth in the Union constitution or the arbitration procedures mandated in the collective bargaining agreement.

A. Valey contended that it was entitled to summary judgment on the FLSA claim on any one of three grounds. First, a grant of summary judgment on the section 301 claim entitled it to a grant of summary judgment on the FLSA claim because the FLSA claim was dependent on the contention under section 301 that Vadino was paid less than the journeyman's rate in breach of the collective bargaining agreement. Second, the FLSA claim was time-barred because it was not commenced within two years after the cause of action accrued as required under the Portal-to-Portal Act, 29 U.S.C. §§ 251–262 (1982). Third, Vadino's overtime wages were properly computed because they were based on the hourly wages Vadino actually earned which constitutes the "regular rate" under the FLSA.

The district court, without giving any explanation of the basis for its order, granted A. Valey's motion for summary judgment.[7] Vadino filed this timely appeal. Our review of the district court's grant of summary judgment is plenary. *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir.1985). In reviewing the district court's order granting the defendant's motion for summary judgment, we must view the underlying facts in the light most favorable to the party opposing summary judgment and accept the nonmovant's allegations as true. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

### III.

### *Supervisory Power: Unexplained Summary Judgment*

■ As a preliminary matter, we are presented, once again, with the district

---

**6.** Vadino's original complaint, in addition to alleging violations of the LMRA and FLSA, also alleged that A. Valey violated the Pennsylvania Wage Payment and Collection Law. The district court granted A. Valey's motion to dismiss the LMRA and FLSA claims, with leave to amend, and dismissed the Pennsylvania Wage Payment and Collection Law Claim with prejudice. Vadino does not appeal the latter ruling.

**7.** A. Valey filed a counterclaim, alleging in Count One that Vadino owed it the outstanding

balance on the wages paid to Vadino above the apprenticeship rate, and in Count Two that Vadino owed it money for two loans which A. Valey purportedly made to Vadino. Vadino's Motion to Dismiss was granted on Count One of the counterclaim, and judgment was entered against A. Valey on Count Two after a trial before a magistrate. As A. Valey has not appealed either of these orders, they are not before us.

court's grant of a motion for summary judgment without any explanation, however brief, of the reasons therefor. *See, e.g., O'Donnell v. United States,* 891 F.2d 1079, 1081 (3d Cir.1989). There are, of course, cases where the reason for summary judgment is apparent on the record because, for example, only one ground was given for the motion. However, in many cases, such as the one before us, various reasons were assigned by the movant as supporting summary judgment, and the district court's failure to explain its position leaves us without a reasoned basis on which to found our review.

It may be that the district courts have been misled by the statements in our earlier opinions that findings of fact and conclusions of law are not mandatory for certain motions. *See, e.g., De Tore v. Local #245 of the Jersey City Public Employees Union,* 615 F.2d 980, 985 (3d Cir.1980). We have declined to require explication of findings of fact for a Rule 12(b)(3) motion to dismiss based on improper venue, *see Myers v. American Dental Ass'n,* 695 F.2d 716, 729–30 & nn. 18–19 (3d Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983), or a motion certifying a class under Rule 23(b)(3), *see Interpace Corp. v. City of Philadelphia,* 438 F.2d 401, 404 (3d Cir.1971), because of the provision of Rule 52(a) that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

We have, instead, attempted to encourage the district courts to explain the basis of their judgments, *see O'Donnell,* 891 F.2d at 1081 ("Although a district court is not required to file an opinion setting forth its reasons or findings for entering summary judgment, the failure to do so in a non-frivolous case makes it extremely difficult, and perhaps impossible, for an appellate court to discern the district court's basis for its summary judgment ruling and to effectively grant appellate review."); *De Tore,* 615 F.2d at 985 ("Although findings of fact and conclusions of law are not required on decisions granting motions for summary judgment, *see* Fed.R.Civ.P. 52(a),

we think that in this case a statement of reasons for the district court's decision is particularly desirable to aid possible appellate review."); *Interpace Corp.,* 438 F.2d at 404 ("[I]t is a salutary practice to give the litigant, either orally or in writing, at least a minimum articulation of the reasons for its decision."); *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir.1973) ("[I]t would be helpful if the district court specifically related the evidence upon which it relies to the factors stated in 28 U.S.C. § 1404(a)" when granting defendant's motion to transfer venue.).

The district judges in this circuit accompany grants of summary judgment in most cases with some articulation of the grounds of their decisions. However, in a significant number of cases, we have been confronted by bald orders, like the one in this case, granting summary judgment without any indication of the ground or grounds on which they have been based. Our attempts to resolve by persuasion the difficult situation presented to the parties and this court by such orders have obviously been unsuccessful. Because this has been a recurring situation, it requires us to decide whether this is an appropriate situation for application of our supervisory power.

 The exercise of our inherent supervisory power to require the district courts to provide an explanation for their orders granting summary judgment is consistent with one of the fundamental bases for such power, *i.e.,* to assist this court in carrying out its statutory function of appellate review. Even critics of the expansive exercise of supervisory power agree that exercise of the power for such a reason is appropriate. *See, e.g.,* Schwartz, *The Exercise of Supervisory Power by the Third Circuit Court of Appeals,* 27 Vill.L.Rev. 506, 518–19 (1982).

In a broad range of situations, we have required some articulation by the district courts. Thus, for example, in *Quality Prefabrication, Inc. v. Daniel J. Keating Co.,* 675 F.2d 77, 81 (3d Cir.1982), we stated: "[E]xercising our supervisory authority over the district courts in this judicial cir-

cuit, we hold that in the future a dismissal of a complaint with prejudice as a Rule 37 sanction must be accompanied by some articulation on the record of the court's resolution of the factual, legal, and discretionary issues presented." *See also Matter of MacMeekin,* 722 F.2d 32, 34–36 (3d Cir. 1983).

In *Coastal States Gas Corp. v. Department of Energy,* 644 F.2d 969, 980 (3d Cir.1981), we stated: "In the future this court, in the exercise of its supervisory powers, will require district courts to state explicitly the legal basis as well as the findings that are necessary to demonstrate that the documents are exempt or disclosable under the [Freedom of Information Act]."

Similarly, in administrative review cases we have explained that because we have a review function to perform, "[r]equiring the [NLRB] to state its reasons enables the reviewing court to 'guarantee the integrity of the administrative process.'" *NLRB v. Armcor Indus.,* 535 F.2d 239 (3d Cir.1976) (quoting *Atchison, Topeka & Santa Fe Ry. v. Wichita Bd. of Trade,* 412 U.S. 800, 807, 93 S.Ct. 2367, 2374–75, 37 L.Ed.2d 350 (1973)). Accordingly, in *Armcor,* we directed the NLRB to "clearly explicate the basis for its decision to issue a bargaining order." *Id.* at 244. The same reasoning underlay our decision to require statements of findings and conclusions by Administrative Law Judges in their rulings on disability benefits under the Social Security Act. *See Cotter v. Harris,* 642 F.2d 700, 704–07 (3d Cir.1981).

Equally applicable here is the rationale for our holding that in cases where the district court approves a settlement in a class action, "[i]t is essential ... that the district court set forth the reasoning supporting its conclusion in sufficient detail to make meaningful review possible; use of 'mere boilerplate' language will not suffice." *Bryan v. Pittsburgh Plate Glass*

*Co.,* 494 F.2d 799, 804 (3d Cir.) (quoting *Protective Committee v. Anderson,* 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968)), *cert. denied,* 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974).

■ Other cases abound but the above suffice to make the point. Although we have been hesitant to impose any additional burden on already overworked trial courts, we have concluded that an accompanying explanation is essential to our meaningful review of grants of summary judgment.[8] We do not view this requirement to be inconsistent with Rule 52(a). The relevant sentence of that rule, quoted above, makes clear the self-evident proposition that findings of fact and conclusions of law thereon[9] are not necessary in ruling on motions under Rules 12 and 56 because resolution of such motions entails a legal determination based on the undisputed facts on the record before the court and the applicable precedent or statute. If there is a genuine issue of material fact, summary judgment would be improper. We see nothing in Rule 52(a) that would preclude our invocation of our supervisory power to require an explanation of the legal basis for the district court's order.

The requirement of some articulation should not appreciably burden the district court. At the same time, it would greatly assist the parties in confining their briefs on appeal to the relevant issues and would enable us to avoid consideration of unnecessary issues. Therefore, we will exercise our supervisory power to require the district courts in this circuit to accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order.

In the interest of judicial efficiency, and because the parties have already adequately briefed and argued all the possible bases for the grant of summary judgment, we

---

8. Because the denial of summary judgment is generally not appealable, we express no opinion on the need for any explanation relating to orders denying such a motion.

9. The Advisory Committee also views the fact findings and legal conclusions to which Rule 52(a) refers as connected. *See* Advisory Comm. Note to 1946 Amendment referring to "the requirement of findings of fact and conclusions of law *thereon.*" (Emphasis added).

will not remand this case for an explanation of the order. We will instead address the merits.

## IV.

### The Section 301 Claim

#### A.

### Statute of Limitations

A. Valey argues that we may sustain summary judgment on Vadino's section 301 claim against it on the ground that Vadino's claim was time-barred. A section 301 claim must ordinarily be filed within six months from the date of accrual. *See Del-Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Vadino argues that he presented sufficient evidence to show the tolling of the statute.[10]

■ In this case, Vadino filed what is, in essence, a hybrid action. In the typical hybrid suit where the employee sues the employer under section 301 for breach of the collective bargaining contract and the union for breach of its duty of fair representation for failing to process the employee's claim through the contract dispute resolution process pursuant to the theory enunciated in *Vaca v. Sipes,* 386 U.S. 171, 184–87, 87 S.Ct. 903, 913–15, 17 L.Ed.2d 842 (1967), the same statute of limitations is applicable to both defendants. *See Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees,* 831 F.2d 429, 433 (3d Cir.1987). The six-month period commences " 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.' " *Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986) (quoting *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984)). Therefore, where an employee sues a union

for breach of its duty of fair representation, the limitations period commences when " 'the plaintiff receives notice that the union will proceed no further with the grievance.' " *Hersh,* 789 F.2d at 232 (quoting *Bruch v. United Steelworkers of America,* 583 F.Supp. 668, 670 (E.D.Pa. 1984)). Even if there has been no explicit notice, the statute of limitations begins to run when "the futility of further union appeals became apparent or should have become apparent." *Scott v. Local 863, International Brotherhood of Teamsters,* 725 F.2d 226, 229 (3d Cir.1984).

■ This suit is somewhat atypical as Vadino only sues his employer for violation of the collective bargaining agreement; he has failed to sue the Union. However, the Supreme Court has viewed the hybrid suit as consisting of two independent, albeit related, causes of action, and has stated that "[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Del-Costello,* 462 U.S. at 165, 103 S.Ct. at 2291; *see also United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 73 n. 2, 101 S.Ct. 1559, 1569 n. 2, 67 L.Ed.2d 732 (1981) (Stevens, J., concurring in part and dissenting in part). Consequently, in a case where the employee had sued only the union, the Court recently held that there was federal jurisdiction over the employee's claim of breach of duty of fair representation against the union notwithstanding the failure to include any claim against the employer. *Breininger v. Sheet Metal Workers International Association Local Union No. 6,* — U.S. —, 110 S.Ct. 424, 432–35, 107 L.Ed.2d 388 (1989). *See also Grasty v. Amalgamated Clothing and Textile Workers Union,* 828 F.2d 123 (3d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988) (suit against union for violation of union constitutions maintained without joining a sec-

---

10. The parties have not distinguished, in terms of legal effect, between Vadino's contention that the statute of limitations was tolled as a result of the Union's representation that it was proceeding on his behalf and the issue of when the claim accrued against the Union for breach of

its duty of fair representation. Although technically the claim accrued when the Union decided, explicitly or implicitly, not to pursue a grievance for Vadino, the Union's representations would have tolled the statute until Vadino had reason to know of that decision.

tion 301 claim against the employer). Although this case presents the converse circumstance, suit only against the employer, we believe that the language and reasoning of *Breininger* and the other cases cited above compel the conclusion that the suit may be maintained.

Suit against only the employer presents somewhat different considerations than suit against only a union. For example, the Supreme Court has made it clear that "an allegation that the union had breached its duty of fair representation [is] a necessary component of the § 301 claim against the employer." *See Breininger*, 110 S.Ct. at 434. In this case, Vadino has made such an allegation. Another issue presented because Vadino's suit has been brought only against the employer is whether the statute of limitations may be tolled as to the employer not only on the basis of its own actions and statements but also on the basis of assurances given by the Union representatives. We conclude that it may be. A contrary holding would put the plaintiff in an untenable position because of the interconnection between the two claims.

■ If Vadino's cause of action against A. Valey were to accrue at the time of the alleged breach of the collective bargaining agreement and before the futility of further appeals to the Union became apparent, Vadino's ability to file a section 301 suit against A. Valey would be ephemeral because such a claim could not be maintained until he could fairly allege that the Union refused to process his grievance. *See Ames v. Westinghouse Electric Corp.*, 864 F.2d 289, 292 (3d Cir.1988). The unfair representation claim is the necessary "condition precedent" to the employee's suit. *Butler v. Local Union 823, International Brotherhood of Teamsters*, 514 F.2d 442, 449–50 & n. 11 (8th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). Allowing the section 301 claim to be tolled until the unfair representation claim also accrues is consistent with the congressional goal of resolving labor disputes in the first instance through the collectively bargained grievance procedure, because the employee will be encouraged to persist in efforts to have the union act on his or her behalf. Therefore, the employee's claim on the employer's alleged breach of the collective bargaining agreement is tolled until it was or should have been clear to the employee that the union would not pursue the grievance. *See Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983) (citing *Butler v. Local Union 823, International Brotherhood of Teamsters*, 514 F.2d 442, 449–50 & n. 11 (8th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).[11]

■ The relevant statute of limitations question, therefore, is not only when Vadino knew, or should have known, that the employer breached the contract but also when he knew, or should have known, that further appeals to the Union would be futile. For this purpose we look to information available to Vadino before August 19, 1986, six months before he filed this action. Because we do not resolve disputed issues of fact on summary judgment, we will confine ourselves to the admissions made by Vadino in his own deposition testimony.

After Vadino left A. Valey in June 1985, he contacted a lawyer. Although that lawyer did not handle labor cases, Vadino waited until late 1985 to see a second lawyer who told him to seek the Union's permission to sue A. Valey. Consequently Vadino contacted George Parsons, the Local 420 business representative, in December 1985 or January 1986. Vadino contends that after explaining to Parsons the alleged discrepancy in pay, Parsons told Vadino that

11. In the somewhat different situation of a hybrid suit where the plaintiff's grievance has proceeded to a final decision by the arbitration board, we have held that the claim accrues at the time the plaintiff knows, or should have known, of the final arbitration decision, rather than when s/he should have reasonably known that further appeals to the union would be futile. *See Childs*, 831 F.2d at 436 (addressing hybrid claim under the Railway Labor Act). We have so held on the ground that to require a plaintiff to sue in court while the grievance procedure has not run its course would be both inefficient, as the grievance procedure may afford the plaintiff all the relief s/he seeks, and unfair, as the plaintiff will be put in the position of suing the union while it still represents him/her. *Id.* at 434–35.

he did not need a lawyer because the Union would handle his complaint. Vadino testified that he did not hear again from Parsons, and that he contacted Parsons on four or five subsequent occasions, each one separated by about a month, and was given a variety of excuses as to why Parsons had not contacted him, including that Parsons was busy, had forgotten, and that Budike was on vacation. App. at 148–149.

In his deposition, Vadino stated that in May 1986, after contacting Parsons numerous times, he felt that Parsons "wasn't pursuing the case enough or either was too busy, whatever his reason was, but it wasn't moving ahead, ... so I started looking for another lawyer on my own." App. at 148. He never contacted Parsons again after May 1986 because he had "called him already four or five times, and nothing, so I just didn't rely on him anymore to do anything about it." App. at 149. Indeed, Vadino testified that at that time he believed that the Union, whether because of "neglect or laziness or just being too busy," had breached its duty of fair representation. App. at 149. Consequently, he contacted present counsel in this action in June or July of 1986. It is unnecessary to pinpoint the exact date when Vadino believed that the Union had breached its duty of fair representation because it is clear that this belief had materialized, at the latest, in July 1986, when he contacted his present counsel.[12]

We recognize that in his answers to the interrogatories by A. Valey, Vadino stated

that he made numerous demands upon the Union to institute a grievance from February through August 1986. Additionally, in supplemental answers to the interrogatories, Vadino stated that he "discovered" that he made telephone calls to George Parsons on April 3, 1986 and December 3, 1986. App. at 198. Vadino contends that the action was therefore timely filed, presumably treating these statements as evidence that as late as December 1986, he did not believe it was futile to pursue his grievance through the Union.

We disagree. The interrogatory answer stating that Vadino requested the Union as late as August of 1986 to institute a grievance was made before Vadino's deposition, and his more specific statements in response to the deposition questions clarify that he no longer believed further contact with the Union would be fruitful when he contacted counsel in June or July of 1986. Vadino's supplemental answers to the interrogatories, which were made after his deposition, do not state or even suggest that the subject of his December telephone call to Parsons was a request to institute a grievance procedure. Mere existence of an unexplained telephone call is insufficient to derogate from Vadino's earlier acknowledgement, under oath, that he believed further appeals to the Union were futile by July of 1986.

Furthermore, we are concerned with the implication of Vadino's argument. If repeated requests to a union to institute a

---

12. We do not suggest that a plaintiff's action necessarily accrues when s/he seeks legal advice. One may seek legal advice as to how to proceed with a grievance through a union representative to satisfy the exhaustion requirement. Under the facts of this case, however, it is clear that Vadino sought legal advice in June or July of 1986 as a direct result of his belief that further appeals to the Union would be futile.

We note the following exchange during Vadino's deposition:

Q. And at that time, May of '86, you believe [sic] that the union was not going to pursue this for you?
A. I don't want to say that I don't believe the union wasn't pursuing it for me. Either the guy was too busy or something was not going right, and I just felt I better get my own lawyer.

Q. The union wasn't responding?
A. Right.

. . . . .
App. at 150.
Although Vadino's statement that "I don't believe the union wasn't pursuing it for me" standing alone would be ambiguous, in the context of Vadino's statements that the case "wasn't moving ahead," that he could no longer rely on Parsons, and that he felt that the Union had breached its duty of fair representation, we believe the totality of the evidence leads to the inescapable conclusion that the futility of further Union appeals was apparent to Vadino by July of 1986, and that as a matter of law the statute of limitations on the claim against the Union accrued at that time.

grievance were to perpetually toll the statute of limitations, despite the employee's belief that such requests were futile, the statutory time bar would be illusory. Thus, Vadino cannot escape the statutory time bar on his section 301 claim against A. Valey on the basis of the Union's representations.

 Vadino also contends that promises by Budike to pay his back wages induced him to refrain from instituting this suit at an earlier time, thereby providing a basis for equitable tolling of the statute of limitations independent of the Union's actions. Vadino's argument is, in essence, a claim that A. Valey should be equitably estopped from raising a defense based on the statute of limitations. Such an estoppel may occur "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit," *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir.1985); *see also English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988), thereby "lull[ing him] into a false security," *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959) (quoting *Schroeder v. Young*, 161 U.S. 334, 344, 16 S.Ct. 512, 516, 40 L.Ed. 721 (1896)). In such circumstances, the employer is estopped while the employee "actively pursu[es] [an] attempt amicably to resolve his employment situation and while the [employer] ... send[s] positive signals." *Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir.1978).

Vadino's action against A. Valey accrued upon the alleged breach of the collective bargaining agreement which, at the latest, occurred on Vadino's last day of work in June 1985, clearly more than six months before suit was filed. We will assume *arguendo* that an employer's misrepresenta-

tions regarding a section 301 claim can lead to equitable estoppel in appropriate circumstances. However, Vadino has failed to carry his burden of establishing the elements of equitable estoppel against A. Valey.

First, he has not established that it was reasonable to rely on Budike's alleged statements that he would settle the suit with Vadino. The Supreme Court has held that the reliance sufficient to effect an estoppel must be reasonable. *See Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). Vadino testified that Budike originally assured him in 1981 or 1982 that he would pay him the proper rate when the company was doing better financially. It is patently unreasonable for Vadino to have relied on allegedly similar statements by Budike made some four or five years after Budike's original statements and more than a year after he left Budike's employ.[13]

Second, and equally fatal to Vadino's estoppel claim, Vadino has not established that in fact he relied on Budike's alleged misrepresentations. *See id.* at 59, 104 S.Ct. at 2223. As we have already noted, Vadino initially sought legal advice as early as 1985 after he left the employ of A. Valey in June of that year. In his deposition, he stated that "the more I thought about it, the more I figured, if [my uncle], in my opinion, cheated me all them years, that I should, you know, get what was legally mine. I wasn't feeling like I was cheating him out of it, I was just trying to get what I felt I would have been paid." App. at 143. After Vadino's requests for aid from Local 420 proved futile, he again sought legal assistance in June or July of 1986 because he "was pretty sure that [he] wanted to go ahead with th[e] case at [that] time." App. at 149. Vadino never testified that in fact he relied on Budike's representations as late as August 1986, and his

---

**13.** Even Vadino acknowledged in his deposition that he eventually dismissed Budike's promises:

I called him off and on from, you know, after I left his employ until about the end of 1986, numerous times, but I didn't—didn't harp on the man, I just called, you know, off and on to—like, well, where's my money? And he

just kept saying to me, after the Gallery gets settled, I'll straighten you out, and after awhile I didn't believe him anymore, it was like promises he kept promising while I worked for him and I believed him that time but not anymore.

App. at 160–61.

pursuit of legal remedies through counsel shows the contrary.

We therefore hold that Vadino has not established a genuine issue of material fact that would prevent application of the six-month limitations bar. In light of our conclusion that Vadino's section 301 claim is time barred, we need not reach the alternative exhaustion issues raised by A. Valey and briefed by the parties.

## V.

*The Fair Labor Standards Act Claim*

The second count of Vadino's complaint was filed under a different statute and alleged the separate, but not totally unrelated, claim that A. Valey violated the Fair Labor Standards Act (FLSA) in computing his overtime wages. Section 7(a) of the FLSA requires that employers compensate an employee working more than forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a)(1) (West Supp.1989).[14]

Vadino acknowledges that A. Valey paid him one and one-half times his normal hourly rate for all hours worked in excess of the forty hour work week. He contends, however, that his "regular rate" was the hourly rate he was entitled to as a journeyman under the collective bargaining agreement, and not the lower rate which he was actually paid. Consequently, Vadino contends, the computation of his overtime wages on the basis of one and one-half times his actual wages failed to meet the requirement of the FLSA.

A. Valey argues that Vadino's FLSA claim is, in essence, a "repackaged" section 301 claim which cannot be maintained under the FLSA because it is dependent on Vadino's unproven contention that he was entitled to the journeyman's rate of pay under the collective bargaining agreement. Appellee's Brief at 29. A. Valey contends that the interpretation of the collective bargaining agreement can be made only in a section 301 action. It argues that under the FLSA claim the court is limited to examining overtime wages on the basis of the rate actually paid.

In *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 734, 101 S.Ct. 1437, 1441, 67 L.Ed.2d 641 (1981), the Court contrasted the two statutes, noting that they reflect "[t]wo aspects of national labor policy." The LMRA, on one hand, governs the relationships between employers and unions by "encourag[ing] the negotiation of terms and conditions of employment through the collective-bargaining process." *Id.* at 734, 101 S.Ct. at 1441. That process, of course, consists of the grievance and arbitration procedures and, if necessary, the resort to federal courts via section 301 to resolve disputes between employers and employees over the interpretation and enforcement of the previously negotiated provisions of collective bargaining agreements relating to, *inter alia,* pay and conditions of employment. *See, e.g., Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). Thus, since 1935, the national labor policy reflected in the National Labor Relations Act and its LMRA amendment has been to provide federal protection for the collective bargaining process as well as dispute resolution mechanisms.[15]

■ The FLSA, on the other hand, is reflective of a different genre of statute, one which "guarantees covered employees specific substantive rights." *Barrentine,* 450 U.S. at 734, 101 S.Ct. at 1441. The

---

**14.** Section 7(a)(1) provides, in full, that:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate no less than one and one-half times the regular rate at which he is employed.

29 U.S.C.A. § 207(a)(1) (West Supp.1989).

**15.** The federal courts may, of course, fashion federal common law in the course of their contract interpretation. *See Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957).

specific minimum protections it gives to individual workers in terms of protecting against " 'the evil of "overwork" as well as "underpay," ' " *Barrentine*, 450 U.S. at 739, 101 S.Ct. at 1444 (quoting *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 578, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682 (1942) (quoting 81 Cong.Rec. 4983 (1937) (message of President Roosevelt))), cannot be abridged by contract, *see, e.g., Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). Indeed, these rights prevail over conflicting provisions in a collective bargaining agreement. *See, e.g., Martino v. Michigan Window Cleaning Co.*, 327 U.S. 173, 177–78, 66 S.Ct. 379, 381–82, 90 L.Ed. 603 (1946).

█ It is true, as noted in *Barrentine*, that the FLSA contains a number of references to collective bargaining agreements, such as those authorizing a collective bargaining agreement to substitute alternative maximum hour provisions for the ones otherwise provided in section 7(a), 29 U.S.C.A. § 207(b) (West Supp.1989), or to require compensation for "preliminary" or "postliminary" working activities which would otherwise be noncompensable. 29 U.S.C. § 254(a)(2) (1982). *See Barrentine*, 450 U.S. at 741 n. 19, 101 S.Ct. at 1445 n. 19. However, the FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement. The enforcement provision of the FLSA is limited to employee suits seeking enforcement of their rights under the statute. *See* 29 U.S.C. § 216(b) (West Supp.1989).

Although some FLSA suits have of necessity referred to collective bargaining agreements, the context has been vastly different from the task Vadino asks us to do here. For example, although we were required to determine in a FLSA suit whether bonus payments provided for under a collective bargaining agreement should be construed as part of the employees' "regular rate" of pay, *see Minizza v. Stone Container Corp.*, 842 F.2d 1456 (3d Cir.), *cert. denied*, — U.S. —, 109 S.Ct.

261, 102 L.Ed.2d 249 (1988), that issue entailed an interpretation of section 7(e) of the FLSA rather than, as sought here, an interpretation of what rate of pay is required under the collective bargaining agreement. Similarly, in the case relied on by Vadino, *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1143 (5th Cir.1971) (per curiam), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972), *overruled in part on other grounds, McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 108 S.Ct. 1677, 1679–80, 100 L.Ed.2d 115 (1988), the court did not interpret any disputed issue regarding the rate of pay but merely decided that because the union and employer had agreed to eliminate overtime pay for the employees in question, it would have been a "hopeless charade" to require the employee to exhaust the grievance procedure.

The Supreme Court has consistently recognized, albeit in a slightly different context, the distinction between claims asserting a statutory right and those to enforce the terms of a collective bargaining agreement. In a line of cases holding that unsuccessful submission of a grievance to arbitration does not preclude access to a judicial forum for resolution of certain statutory claims, *see Atchison, Topeka & Sante Fe Ry. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (Federal Employers' Liability Act); *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (42 U.S.C. § 1983); *Barrentine*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (FLSA); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (Title VII of the Civil Rights Act of 1964), the Court has noted the "different considerations" applicable and has emphasized that the statute at issue in each case provides substantive protection "that is independent of the employer's obligations under its collective-bargaining agreement." *Atchison*, 480 U.S. at 565, 107 S.Ct. at 1415–16. *See also Gardner–Denver*, 415 U.S. at 49–50, 94 S.Ct. at 1020 (noting "distinctly separate nature" of employee's contractual and statutory rights).

We are not aware of, nor has Vadino cited, any case where a court has resolved as a threshold matter in a FLSA action a dispute concerning the amount of wages that should have been paid under the terms of the collective bargaining agreement. In short, while claims resting on the language of section 7(a) are clearly cognizable under that section, we believe that claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301.

A. Valey argues that Vadino would therefore not have a claim for overtime wages under section 7(a) of the FLSA even if he established his entitlement to the journeyman's rate. A. Valey relies on language in cases that refers to "the wages actually paid by the employer" as the "employee's regular rate of pay" for purposes of the minimum pay and overtime provisions. *See Tippie v. Affordable Inns, Inc.*, 24 Wage & Hour Cas. (BNA) 975, 980–81 (W.D.Okla.1980). Thus, for example, in *Mumbower v. Callicott*, 526 F.2d 1183, 1187 (8th Cir.1975), the court stated that section 7(a) of the FLSA "has been uniformly interpreted to require the fifty percent overtime premium to be added to the actual wage paid." *See also Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948) ("[T]he regular rate of pay cannot be left to a declaration by the parties" but "must be drawn from what happens under the employment contract.").

■ Those cases, however, presented issues different from that before us and we are not prepared to accept A. Valey's restrictive view of the FLSA under which the "regular rate of pay" for purposes of computing the overtime provisions of the FLSA must always be the actual wages. Instead, we view the actual wages paid as the presumptive "regular rate" of pay under the FLSA. If those wages have been determined by the appropriate procedures to be in nonconformance with the collective bargaining agreement, we see no reason why

the employee could not enforce his or her right to the correctly computed overtime wages by a FLSA action. We hold simply that an employee cannot circumvent the necessity of complying with the LMRA procedure to get a determination of his or her right to the wages claimed.

There is language in the Court's opinion in *Barrentine* which supports this view. Although in that case the Court held that the employees' FLSA claim that they were entitled to compensation for pre-trip safety inspections required a statutory interpretation rather than one construing the language of the collective bargaining agreement, the Court assumed without deciding that "courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement." 450 U.S. at 742 n. 19, 101 S.Ct. at 1445 n. 19.

It follows that in the event of a dispute as to the correct wage rate under a collective bargaining agreement and a consequential claim under the overtime provision of the FLSA, the procedure we envision is to decide the contract interpretation issue through the grievance procedure to arbitration. If exhaustion can be excused, then the employee may file a section 301 claim, as Vadino indeed sought to do here. Concurrent with that, the employee may bring a FLSA claim, but the FLSA overtime claim would be dependent upon the resolution in the section 301 claim of the contract interpretation issue.

■ Unfortunately for Vadino, his section 301 claim was untimely. He cannot remedy that defect by establishing in the claim brought under section 7(a) of the FLSA that which he should have established under section 301 of the LMRA. Because we have concluded that section 7(a) does not provide a means for adjudicating disputes under the collective bargaining agreement, we hold that Vadino cannot seek to establish under section 7(a) that he was entitled to the journeyman's rate. Absent such a determination, his claim that his overtime pay violated the FLSA must

fail.[16]

## VI.

For the foregoing reasons, we will affirm the district court's order granting A. Valey's motion for summary judgment.

16. A. Valey also contends that because Vadino filed this action on February 19, 1987, but only claimed damages in his amended complaint for overtime pay through 1984, his FLSA claim is time-barred under the applicable two-year statute of limitations. *See* 29 U.S.C. § 255 (1982). The district court's joint pre-trial order, however, lists Vadino as claiming overtime damages from July 1, 1984 through June 30, 1985 in the amount of $2,025. Because we have determined that the grant of summary judgment on Vadino's section 301 claim disposes of his FLSA claim, we need not consider whether the inclusion of a claim for overtime wages in the joint pre-trial order effectively amended his complaint, thereby making his claim timely for at least the period between February 19, 1985 through June 30, 1985. Nor need we reach Vadino's claim that the applicable statute of limitations is three years because of A. Valey's willful violation of the FLSA.