

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2002

# Forbes v. Lower Merion

Precedential or Non-Precedential: Precedential

Docket No. 01-3942

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Forbes v. Lower Merion" (2002). *2002 Decisions.* Paper 795.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/795

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 11, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3942

LORENZO A. FORBES; ELLA M. FORBES, IN THEIR OWN
RIGHT AND AS CO-ADMINISTRATORS OF THE ESTATE
OF ERIN DUDLEY FORBES, DECEASED

v.

TOWNSHIP OF LOWER MERION; JOSEPH J. DALY,
POLICE SUPERINTENDENT, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS TOWNSHIP OF LOWER MERION
POLICE SUPERINTENDENT; JOHN SALKOWSKI,
OFFICER, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A TOWNSHIP OF LOWER MERION POLICE
OFFICER; JOHN DOE, REPRESENTING UNKNOWN
EMPLOYEES OF THE LOWER MERION TOWNSHIP
POLICE DEPARTMENT, INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES AS TOWNSHIP OF LOWER
MERION POLICE OFFICERS; CRAIG MCGOWAN, SGT.,
individually and in his official capacity as a Tow nship of
Lower Merion Police Officer c/o Lower Merion Police
Department, 71 East Lancaster Avenue,
Ardmore, PA 19003

John Salkowski; Craig McGowan,

Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
District Court Judge: Honorable William H. Yohn, Jr.
(D.C. No. 00-cv-00930)

Argued: September 12, 2002

Before: ALITO and FUENTES, Circuit Judges, and
OBERDORFER,*District Judge

(Filed: December 11, 2002)

LLOYD G. PARRY (Argued)
Davis, Parry & Tyler
14th Floor, 1525 Locust Street
Philadelphia, PA 19102

Counsel for Appellants

SHERYL S. CHERNOFF
SUSAN F. BURT (Argued)

        Burt-Collins & Chernoff
        P.O. Box 237
        Merion Station, PA 19066

        Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

This action under 42 U.S.C. S 1983 arises out of a police
shooting in Lower Merion Township, Pennsylvania.
Defendants John Salkowski and Craig McGowan, two police
officers, appeal from an order of the District Court denying
their motion for summary judgment based on qualified

_____

* The Honorable Louis F. Oberdorfer, Senior District Judge for the
District of Columbia, sitting by designation.

                            2

immunity. In denying that motion, the District Court held,
without elaboration, that the plaintiffs had raised genuine
issues of material fact regarding their Fourth Amendment
excessive-force claim. The scope of our jurisdiction to
review the decision of the District Court depends upon the
precise set of facts that the District Court viewed as subject
to genuine dispute. Because the District Court did not
identify this set of facts, we find that we are greatly
hampered in deciding this appeal. Accordingly, we remand
the case to the District Court so that the facts found to be
in dispute can be specified. We also announce a
supervisory rule to be followed in all subsequent cases in
which a summary judgment motion based on qualified
immunity is denied on the ground that material facts are
subject to genuine dispute. So that we can carry out our
review function without exceeding the limits of our
jurisdiction under Johnson v. Jones, 515 U.S. 304 (1995),
we will henceforth require the District Courts to specify
those material facts that are and are not subject to genuine
dispute and explain their materiality.

I.

In the early-morning hours of January 10, 2000, Mr. Erin
Dudley Forbes concluded his shift working as a security
guard and stopped at an A-Plus convenience store in Bryn
Mawr, Pennsylvania. Shortly thereafter, the clerk
telephoned 911, reporting that Forbes had robbed the store
and beaten the clerk over the head with "what looked like
a billy jack." The clerk told police that the assailant was not
otherwise armed and described Forbes and his car.
Dispatchers transmitted the description of the fleeing
suspect on police radio and announced that a robbery had
occurred.

Police caught up with Forbes in Lower Merion Township
after an automobile pursuit, and at least some of the events

that followed were captured on a grainy police videotape that is part of the record of this case. The parties agree that the officers surrounded Forbes's car and shouted commands and that Forbes then extended his middle finger and bolted from the car, brandishing a heavy wooden staff. Here the parties' accounts diverge. The officers claim that

3

Forbes charged "right at" police and motioned to attack a retreating Salkowski. By contrast, the plaintiffs claim that Forbes darted away from the officers, but they appear to concede that the trajectory of his footpath triangulated towards the direction in which Salkowski also ran. Salkowski fired one shot, felling Forbes.

After Forbes was shot, he lay on the ground, "mumbl[ing]" or "moan[ing]," still clutching the staff, with one hand obscured. McGowan then kicked the staff aside and ordered Forbes to show his hands. Whether Forbes suffered from delirium or fading consciousness or simply intended to resist police, he did not comply. McGowan then sprayed him once with pepper spray, called paramedics, and minutes later shackled his hands with the help of another officer. The defendants claim that Forbes fought the handcuffing, but according to the plaintiffs, Forbes offered "no resistance to the handcuffing" and was "motionless" by that point. After Forbes was restrained, police began administering first aid. Doctors pronounced Forbes dead roughly a half hour after the shooting.

Forbes's parents filed this action against Salkowski and McGowan under 42 U.S.C. S 1983, alleging that the officers violated Forbes's rights under the Fourth, Fifth, and Fourteenth Amendments. The officers moved for summary judgment, asserting that the plaintiffs' claims were defeated by qualified immunity, but the District Court denied summary judgment on the plaintiffs' Fourth Amendment excessive-force claim on the ground that genuine issues of material fact existed regarding that claim. The Court did not specify which material facts it viewed as subject to genuine dispute, however, and this appeal followed.

II.

Although 28 U.S.C. S 1291 ordinarily limits appellate jurisdiction to "appeals from . . . final decisions of the district courts," certain collateral orders merit interlocutory review because they "finally determine claims of right . . . too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v.

4

Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). When a defendant moves for summary judgment based on qualified immunity, the denial of the motion may be

appealed immediately under the collateral-order doctrine because "[t]he entitlement is an immunity from suit rather than a mere defense to liability[ ] and . .. is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985). However, this right to interlocutory review is limited "to the extent that [a claim of qualified immunity] turns on an issue of law." Id. at 530. For instance, we may "review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right," but we may not "consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." Ziccardi v. City of Philadelphia, 288 F.3d 57, 61 (3d Cir. 2002). When a defendant argues that a trial judge erred in denying a qualified-immunity summary-judgment motion because the judge was mistaken as to the facts that are subject to genuine dispute, the defendant's argument cannot be entertained under the collateral-order doctrine but must instead await an appeal at the conclusion of the case. See Johnson, 515 U.S. at 313-16.

Qualified immunity insulates from civil liability government officials performing discretionary functions insofar as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). In assessing a claim of qualified immunity, we must review the law relevant to the official's behavior and ask whether the official could have believed that his or her actions were justified by law. See Good v. Dauphin Cty. Soc. Servs., 891 F.2d 1087, 1094 (3d Cir. 1989). The second part of this inquiry contains two components. To overcome the defense of qualified immunity, (1) the facts, "[t]aken in the light most favorable to the party asserting the injury,[must] show the officer's conduct violated a constitutional right," Saucier v. Katz, 533 U.S. 194, 201 (2001), and (2) "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640.

5

Qualified immunity is defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." Wood v. Strickland, 420 U.S. 308, 322 (1975). The doctrine aims to exclude "the plainly incompetent" and "those who knowingly violate the law" while accommodating reasonable "mistaken judgments." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (citation and internal quotation marks omitted). If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful.

III.

In this case, the District Court denied Salkowski's and McGowan's summary-judgment motions without identifying the set of material facts that the Court viewed as subject to genuine dispute. As a consequence, we are greatly hampered in ascertaining the scope of our jurisdiction. If the District Court had specified the material facts that, in its view, are or are not subject to genuine dispute, we could "review whether the set of facts identified by the district court [as not subject to genuine dispute] is sufficient to establish a violation of a clearly established constitutional right," Ziccardi, 288 F.3d at 61, but based on the District Court's spare comments in denying the defendants' summary-judgment motion, we are hard pressed to carry out our assigned function. We do not fault the District Court for not specifically identifying the genuinely disputable material facts because our prior qualified-immunity cases have not imposed the requirement. However, we find that the lack of such a specification impairs our ability to carry out our responsibilities in cases such as this.

In analogous situations where clearer statements of law or references to the record are necessary to facilitate meaningful appellate review, this Court has announced supervisory rules regulating important procedural matters. For example, in Vadino v. A. Valey Engineers, 903 F.2d 253

6

(3d Cir. 1990), we reviewed a grant of summary judgment whose reasoning was not apparent from the record and which did not provide any indication of the grounds on which it was based. We noted that a requirement that District Courts accompany such orders with some articulation of their reasoning would not impose a serious burden, would assist parties in crafting appellate briefs responsive to dispositive issues, and would clearly frame appellate review. Thus, we exercised our supervisory power "to require the district courts in this circuit to accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order." Vadino, 903 F.2d at 259. Other situations in which we have established similar supervisory rules include, e.g., Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 295 (3d Cir. 1991) (holding that a court entering a directed verdict pursuant to Rule 50 should "set forth an explanation sufficient to permit this court to understand the legal premise for the court's order") (citation and internal quotation marks omitted); Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 81 (3d Cir. 1982) (ruling that "a dismissal of a complaint with prejudice as a Rule 37 sanction must be accompanied by some articulation on the record of the court's resolution of the factual, legal, and discretionary issues presented"); and Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975) (holding that entry of final judgment on a claim in a multiparty action pursuant to Rule 54(b) should "clearly articulate the reasons and factors

underlying [the] decision to grant 54(b) certification"). "It is essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law." Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson , 390 U.S. 414, 434 (1968).

At least one other Circuit has encountered the same difficulty in the qualified-immunity context that motivates us to act in a supervisory capacity here. See Beck v. Schwartz, 992 F.2d 870, 871 (8th Cir. 1993) (holding that

it was "error" for "the district court[to] overrule[ ] appellant's motion for summary judgment without reference to th[e] [qualified immunity] defense"). Our approach differs from Beck's. We cannot hold that the District Court's denial of summary judgment constituted error here because in the absence of a clear supervisory rule, the Federal Rules of Civil Procedure do not impose on trial courts the responsibility to accompany such an order with conclusions of law. See FED. R. CIV. P. 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule . . . 56. . . ."). We instead exercise our supervisory power to require that future dispositions of a motion in which a party pleads qualified immunity include, at minimum, an identification of relevant factual issues and an analysis of the law that justifies the ruling with respect to those issues.

Having concluded that a supervisory rule is necessary in this context, it falls upon us to determine the appropriate disposition of the instant appeal. In Vadino, we limited our supervisory rule to future cases and proceeded to address the merits rather than remand the case to the District Court. See 903 F.2d at 259-60. That approach is common when the record provides sufficient guidance for an appellate court seeking to retrace the analytical steps taken by the District Court. See also, e.g. , Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 81 (3d Cir. 1982); Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1048 (3d Cir. 1973). By contrast, in Allis-Chalmers, we did not address the merits of the appeal with finality and "remanded only for a statement of reasons so that this Court may properly determine" whether the original decision was proper. 521 F.2d at 367 n.16 (emphasis removed). Such a remand is favored when the record omits key information, e.g., Gould v. Members of the New Jersey Div. of Water Policy and Supply, 555 F.2d 340, 341 (3d Cir. 1977), or when the lack of sufficient articulation for the decision renders appellate review unduly speculative. Farnese v. Bagnasco, 687 F.2d 761, 766 (3d Cir. 1982). In this case, although we are satisfied with the record's completeness, we are persuaded to remand by our desire not to conduct a narrower or more expansive review than is

required by the precise contours of the District Court's

order. Since we are unable to identify those contours, we proceed to detail the parameters of the articulation necessary for us to conduct a meaningful review.

IV.

We are familiar with the various factual disputes between the parties and would find it helpful in deciding this appeal for the District Court to identify which such disputes it found genuine and material.

The plaintiffs, as noted, assert that Forbes bolted away from the officers as they converged on him, and they therefore dispute Salkowski's argument that he shot Forbes in self-defense. A diagram depicting the position of Forbes's body relative to the street and cars appears to constitute one of the plaintiffs' principal items of evidence on this question. The plaintiffs also refer to the police video recording and cite an examiner's report on the trajectory of the bullet through Forbes's body. We are interested to know whether the District Court found that these items of evidence were sufficient to raise genuine factual disputes regarding Forbes's location, the direction in which he was facing, or his direction of movement at the moment of the shooting, and, if so, whether the plaintiffs' allegations are sufficient to establish a violation of a constitutional right.

Appellants dispute the materiality of Forbes's location and direction, arguing that Salkowski could reasonably have believed himself legally entitled to fire his weapon in any event. Pennsylvania law empowers police officers to use deadly force when "(i) such force is necessary to prevent [an] arrest from being defeated by resistance or escape; and (ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon." 18 PA. CONS. ST. S 508(A)(1) (2002). The officers argue that a reasonable person in Salkowski's position, in reliance on that statute, could have believed it lawful to act as Salkowski did. Consequently, another important question is whether the District Court found that a genuine issue of fact existed as to whether Forbes's wooden staff was or might reasonably be perceived as a deadly weapon. During oral arguments, Appellees

maintained that a factual issue existed regarding this question but conceded that the statute did not implicate any other material issues.

The parties do not propose a statutory framework that covers McGowan's conduct, so we are even more hesitant to surmise what factual issues the District Court may have identified or considered material. At minimum, it would aid

us to know if the District Court concluded that the Appellees raised genuine issues regarding whether Forbes posed any danger to the officers after being shot or whether police could reasonably assume that he might. If the District Court considered any other factual issues bearing on whether McGowan's conduct was objectively unreasonable or whether it interfered with a clearly established constitutional right, a description and analysis of those issues would likewise assist us considerably.

The judgment of the District Court is vacated, and we remand the case for reentry of judgment in accordance with the supervisory rule announced herein. This panel shall retain jurisdiction and proceed to decide any questions properly within our jurisdiction after the District Court provides the requested specification.1

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

1. Judge OBERDORFER concurs in the result and in parts I, II, and IV of the opinion. As a visiting judge he expresses no opinion about the supervisory rule established for the Circuit in part III.

10