**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-4031

_____

DAVID BELL, et al.,
                                        Appellants
v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY

_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Civil No. 11-cv-04047)
District Judge:  Honorable Joel H. Slomsky

_____

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2013

_____

Before: GREENAWAY, JR., SLOVITER and BARRY,
*Circuit Judges*

(Opinion Filed: August 19, 2013)

_____

Bruce Bodner, Esq.
Howard J. Kaufman, Esq.
Kaufman, Coren & Ress
2001 Market Street
Two Commerce Square, Suite 3900
Philadelphia, PA 19103

*Counsel for Appellants*

Jo Bennett, Esq.
Michael G. Tierce, Esq.
Stevens & Lee
1818 Market Street
29th Floor
Philadelphia, PA 19103-0000
        -AND-
Zachary R. Davis, Esq.
Hangley, Aronchick, Segal, Pudlin & Schiller
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103-0000

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

BARRY, *Circuit Judge*

Plaintiffs, on behalf of themselves and former and current bus drivers and trolley operators (the "Operators") employed by defendant, the Southeastern Pennsylvania Transportation Authority ("SEPTA"), brought this class action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, to recover unpaid wages and overtime compensation for work performed during morning "pre-trip" inspections required before the start of each Operator's daily run. Relying on our decision in *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990), the District Court granted SEPTA's motion to dismiss on the ground that the FLSA claim required the interpretation of provisions of three collective bargaining agreements (the "CBAs") between SEPTA and the unions representing the Operators and was therefore subject to those agreements' grievance and arbitration provisions. Because we conclude that the Operators' FLSA claim does not require the interpretation of the collective bargaining agreements, we will vacate the order of the District Court.

# I. BACKGROUND

## A. Pre-Run Obligations

This dispute involves two sets of responsibilities each Operator must fulfill at the start of the workday prior to leaving the bus or trolley depots. First, SEPTA's *Bus Operations Rules and Regulations Manual* has long required Operators to perform a series of clerical tasks each morning (the "Reporting Tasks"). These tasks include checking in with the dispatcher, collecting and punching passenger transfers, filling out forms and waybills, reading SEPTA "Bulletin Orders," checking daily detours and operating conditions, copying their run schedules, and determining and walking to the location of their vehicles. Compl. at ¶ 18. The Reporting Tasks take approximately ten minutes to complete. Accordingly, SEPTA's Operating Manual requires that Operators "report for duty at the required time and at the required location, in accordance with schedules set up in the employees' particular departments and locations . . . not less than ten minutes" before the time the bus is scheduled to leave the depot. *Id.* at ¶ 16. The Operators allege that, even though they are compensated for performing the Reporting Tasks, this time is not included in the calculation of overtime.

Since daily pre-trip vehicle safety inspections became a federal and state requirement in 1992, SEPTA has also required that Operators perform daily pre-trip inspections (the "CDL Inspections"), which require them to inspect several items on each vehicle, including the braking system, lights, horns, doors, turn signals, wheelchair lifts, and PA system. *Id.* at ¶¶ 19, 20. The CDL Inspections take approximately fifteen minutes to complete. The Operators contend that SEPTA fails to compensate them for these inspections, and that they must perform them "off the clock." According to the FLSA, Operators must be paid 1.5 times their regular rate of pay for all hours worked over 40 hours in a given week. Because many Operators work 40 hours a week exclusive of the time spent performing CDL inspections, the Operators contend that SEPTA's failure to compensate them for this time results in unpaid overtime wages, constituting a willful violation of the FLSA.

3

**B. The Collective Bargaining Agreements**

The Operators and SEPTA are bound by the terms of three separate collective bargaining agreements between (1) SEPTA and the City Transit Division Operators ("CTDO"); (2) SEPTA and the Transport Workers Union Local 234 ("TWU"); and (3) SEPTA and the United Transportation Union Local 1594 ("UTU"). Each of the CBAs includes a provision concerning compensation for time spent working prior to the morning scheduled start time. The CBA between the CTDO and SEPTA provides:

> Where an employee is required to report in advance of the scheduled starting time of one's run or to turn in passenger receipts or to so report and turn in, and does so, one-quarter hour will be added to the scheduled run time and the employee will be paid for the one-quarter hour at the aforesaid rate. This one-quarter hour will be treated as time worked for all purposes except in calculating overtime under Section 404(c).

The CBA between the TWU and SEPTA provides:

> The authority will pay operators required to report ten (10) minutes in advance of pull-out and who are required to turn in receipts at the completion of said work one quarter (1/4) of an hour per day for report and turn-in allowance. Such allowance will not be included for the computation of overtime.

The CBA between the UTU and SEPTA provides:

> An additional allowance of two-tenths (.2) of an hour per day will be allowed all regular Operators for reporting time for preparation of their assignments. . . . It is understood that these additional time allowances should not be considered in the computing of overtime.

Each of the CBAs also includes broad grievance provisions, which, in sum and substance, require that parties submit to arbitration any dispute involving the application, implementation, or interpretation of any of the provisions of the agreements.

Relying on our decision in *Vadino*, SEPTA moved to dismiss the complaint on the ground that the Operators' FLSA claim is dependent on the disputed interpretation of the above CBA provisions regarding reporting time, which, according to the CBAs' respective grievance provisions, require that the parties first submit the disputed issue to arbitration. On September 28, 2012, the District Court granted the motion to dismiss for lack of subject matter jurisdiction. The Operators now appeal.

## II. ANALYSIS

The FLSA requires that employers compensate employees working longer than forty hours a week for time worked in excess of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The Operators contend that time spent—approximately twenty-five minutes—conducting the Reporting Tasks and the CDL Inspections prior to the start of morning runs is compensable "time worked" for purposes of the FLSA. The Complaint alleges that SEPTA violated section 207(a) of the FLSA by failing to properly compensate the Operators for this time and for failing to include this time in the computation of overtime.[1]

---

[1] More specifically, the argument goes, it is a two-fold harm suffered by the Operators. If SEPTA is complying with the terms of the CBAs, Operators represented by the CTDO and the TWU receive compensation for 15 minutes pay for pre-trip responsibilities; Operators represented by the UTU receive 12 minutes pay. According to the Complaint, therefore, CTDO and TWU workers are not compensated at all for 10 minutes of compensable work; Operators represented by the UTU are not compensated at all for 13 minutes of compensable work. Additionally, each of the CBAs excludes this time for purposes of calculating overtime.

The District Court concluded, however, that the resolution of the FLSA claim depends upon the interpretation of provisions of the collective bargaining agreements, which, in accordance with the grievance and arbitration provisions of the CBAs, and the "strong federal policy in favor of arbitration," must be decided in the first instance by an arbitrator. We disagree.

In *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981), the Supreme Court addressed the distinction between claims arising out of breaches of collective bargaining agreements (in that case, under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185), and those brought under the FLSA. The Court acknowledged that the LMRA governs relationships between employers and unions by "encourag[ing] the negotiation of terms and conditions of employment through the collective-bargaining process," while the FLSA reflects a different genre of statute, one which "guarantees covered employees specific substantive rights." *Barrentine*, 450 U.S. at 734. The minimum protections the FLSA provides to individual workers, including 29 U.S.C. § 207(a)(1), "take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Id.* at 740-41. An employee's right to relief under the FLSA, therefore, is distinct from an employee's contractual rights as provided in a collective bargaining agreement. *Id.* at 745 ("[T]he FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization."). The Court noted that, when vindicating rights under the FLSA, the statute's "enforcement scheme grants individual employees broad access to the courts. . . . No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute." *Id.* at 740.

In some instances, however, an employee's FLSA claim is inevitably intertwined with the interpretation or

All of the class members, therefore, are deprived of 25 minutes work in the calculation of overtime.

application of a collective bargaining agreement. We encountered this in *Vadino*. In *Vadino*, an employee asserted two claims against his former employer: (1) a claim under section 301 of the LMRA, alleging that his employer breached the applicable CBA by paying him less than the "journeyman" wages to which he contended he was entitled; and (2) a claim under the FLSA, contending that his employer paid him less than one and one-half times his "regular rate" for hours worked in excess of forty hours per week, because his overtime rate should have been one and one-half times the "journeyman" rate. 903 F.2d at 257. Vadino, however, admitted that his employer paid him one and one-half times his "normal" hourly rate for overtime hours. *Id.* at 264. His FLSA claim, then, was tethered to the threshold question of whether or not he was entitled to journeyman wages or normal wages under the governing CBA. In this sense, Vadino's FLSA claim was entirely derivative of his breach of contract claim, and, concomitantly, dependent on an interpretation of that CBA.

To reconcile the competing interests of a strong federal policy in favor of arbitration to settle disputes between employers and unions over provisions of a CBA with an individual employee's statutory rights under the FLSA, we held that "[FLSA] claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under [the LMRA]." *Id.* at 266. We set forth the appropriate procedure in the event a FLSA claim depends on an issue of CBA interpretation:

It follows that in the event of a dispute as to the correct wage rate under a collective bargaining agreement and a consequential claim under the overtime provision of the FLSA, the procedure we envision is to decide the contract interpretation issue through the grievance procedure to arbitration. If exhaustion can be excused, then the employee may file a[n] [LMRA] claim . . . . Concurrent with that, the employee may bring a FLSA claim, but the

7

> FLSA overtime claim would be dependent upon the resolution in the [LMRA] claim of the contract interpretation issue.

*Id.* In other words, if a FLSA claim depends on the disputed interpretation of a CBA provision, an employee must first go to arbitration—through the representative union—before vindicating his or her rights in federal court under the FLSA.

SEPTA contends that the reasoning of *Vadino* compels the Operators to first exhaust arbitration pursuant to the CBAs' grievance provisions before proceeding with their FLSA claim. Specifically, SEPTA argues that the FLSA overtime claim requires an arbitrator to determine whether the provisions of the CBA governing compensation for reporting time prior to the start of daily schedules "include payment for pre-trip inspections." Appellee's Br. at 20. Because there exists no dispute over the interpretation or application of any of the provisions of the CBAs that has any impact on the Operators' FLSA claim, SEPTA's contention is unavailing.

Unlike the employee in *Vadino*, the Operators do not contend that they are entitled to additional payment under a CBA. Neither do they contend that SEPTA fails to compensate them in the amounts set forth in the CBAs for time spent performing their duties prior to the scheduled starting time. Indeed, the Operators do not allege that SEPTA has violated the terms of the CBAs in any way. Rather, they argue, their FLSA claim exists independently of any rights they have under their respective CBAs: (1) they are not fully compensated for approximately fifteen minutes spent performing CDL inspections; and (2) their pre-trip responsibilities, the CDL inspections and the Reporting Tasks, are not included in the calculation of overtime. Neither of these alleged failures necessitates the resolution, as the District Court concluded, of the "applicability of the contractual provisions [regarding pre-trip reporting in the CBAs] to morning inspections." J.A. 9. Nor is the FLSA claim at "issue in this case [] compensation for morning pre-trip inspections *pursuant to the terms of the CBAs*." *Id.* at 10 (emphasis added). Rather, resolution of the FLSA claim requires a factual determination of the amount of time

8

Operators are required to work prior to their scheduled start, and a legal determination regarding whether this time is (1) compensable and (2) subject to the overtime provisions of the FLSA. 29 U.S.C. § 207(a)(1). Unlike *Vadino*, neither of these determinations depends on the resolution of a disputed reading of the CBAs.

SEPTA also relies on *Townsend v. BC Natural Chicken LLC*, Civ. No. 06-4317, 2007 WL 442386 (E.D. Pa. Feb. 2, 2007), in which employees alleged that certain activities, including the "donning and doffing" of personal protective equipment prior to and immediately after scheduled work, constituted work for the purposes of the FLSA. *Id.* at *4. The district court, citing *Vadino*, dismissed the FLSA claim in favor of arbitration because it would have been required to interpret a provision of the CBA that provided for "twelve (12) minutes pay per week to provide for wash up time." *Id.* Although, as here, *Townsend* did not involve a FLSA claim derivative of a separate breach of contract claim, we find it readily distinguishable due to the unique circumstances of a "donning and doffing" claim and a quirk of the FLSA statute.

Section 203(o) of the FLSA permits parties, through the terms of a collective bargaining agreement, to exclude from "hours worked" an employee's "time spent changing clothes or washing." In other words, unlike most of the statute that "guarantees covered employees specific substantive rights," *Barrentine*, 450 U.S. at 734, which cannot be abridged by contract, § 203(o) explicitly permits employers to exclude, in the collective bargaining process, time spent changing clothes. Accordingly, the *Townsend* court dismissed the action in favor of arbitration, reasoning that an arbitrator need first decide whether the "donning and doffing" of protective gear was intended by the parties to be "wash up" time under the CBA that could validly be excluded from an overtime calculation under the FLSA. *Townsend*, 2007 WL 442386 at *4. If the arbitrator were to interpret the CBA such that the "wash up" provision covered the "donning and doffing" of protective gear, § 203(o) would authorize the employer to limit overtime pay without running afoul of the FLSA. Just as in *Vadino*, § 203(o) of the FLSA rendered

9

plaintiffs' FLSA claim dependent on a threshold interpretation of the CBA. *See id.* ("[A]ny decision this Court or any finder of fact may take regarding Plaintiff's [FLSA claims] requires the Court to also interpret the CBA."). There is no analogous statutory provision here.

Were the parties to arbitrate a dispute over the CBA provisions governing time spent working prior to the morning scheduled start time—to the extent there even exists a dispute—there would be no effect on the Operators' FLSA claim. If, for instance, an arbitrator were to determine that the pre-trip vehicle inspections are "covered" by the CBA provisions, the Operators would still have a claim that their payments under the CBA violate the FLSA. Accepting the facts alleged in the Complaint as true, as we must, the Operators are being compensated, pursuant to the CBAs, for only 12 or 15 minutes of 25 minutes of compensable work, none of which is calculated when assessing overtime. If pre-trip vehicle inspections are not "covered" by the CBA provisions, there is simply no provision governing compensation for those inspections. The result is the same, and the Operators are entitled to the same statutory relief.

This is in stark contrast to *Vadino*, where the very existence of the plaintiff's overtime FLSA claim was "consequential" to the wage dispute under the collective bargaining agreement. *Vadino*, 903 F.2d at 266. Likewise in *Townsend,* the disputed work time at issue, under an express provision of FLSA, could be altered by the terms of a CBA. Here, where the Operators rely solely on their statutory, rather than their contractual, rights to recovery, district courts have had no difficulty concluding that such plaintiffs may proceed on their FLSA claims without first seeking arbitration. *See, e.g., Barnello v. AGC Chems. Ams., Inc.*, Civ. No. 2:08-CV-03505, 2009 WL 234142, at *3 (D.N.J. Jan. 29, 2009) (distinguishing *Vadino* and denying motion to dismiss where plaintiffs "do not claim that they are owed compensation pursuant to the CBA and further emphasize that their claims stem solely from their alleged statutory right to compensation for time worked under the FLSA" (internal quotation marks omitted)); *Gordon v. Kaleida Health*, 08-CV-378S, 2008 WL 5114217, at *9 (W.D.N.Y. Nov. 25, 2008) (distinguishing

*Vadino* where plaintiff withdrew challenge to the CBA and claim for unpaid wages was only "statutorily based" on the FLSA); *Gallagher v. Lackawanna Cnty.*, Civ. No. 07-0912, 2008 WL 9375549, at *6 (M.D. Pa. May 30, 2008) (concluding that plaintiffs' claims "aris[ing] under and concern[ing] the meaning of a federal statute, and specifically the meaning of 'compensable work' under the FLSA" need not be arbitrated); *Andrako v. U.S. Steel Corp.*, Civ. No. 07-1629, 2008 WL 2020176, at *5 (W.D. Pa. May 8, 2008) ("[The plaintiffs'] argument is that [the disputed] time is compensable work under the FLSA irrespective of what the CBA provides. . . . Because . . . the FLSA claim is not dependent on the interpretation of a disputed provision of the CBA, it would be improper . . . to dismiss the FLSA claim on that basis . . . ."); *Moeck v. Gray Supply Corp.*, Civ. No. 03–1950, 2006 WL 42368, at *3 (D.N.J. Jan. 6, 2006) (denying motion to dismiss where "[p]laintiffs' claims are not based on an interpretation of the collective bargaining agreement with respect to the appropriate wage rate, but are based on their contention that they are entitled to overtime" under the FLSA).

## III. CONCLUSION

For the foregoing reasons, we will vacate the order of the District Court and remand for further proceedings in accordance with this Opinion.