**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2835
_____

JESSICA HERZFELD,
on behalf of herself and all other similarly situated

v.

1416 CHANCELLOR, INC. doing business as The Gold Club;
DOES 1 THROUGH 10, INCLUSIVE

1416 CHANCELLOR, INC.,
Appellant

___

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cv-04966)
District Judge:  Honorable Mark A. Kearney
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 19, 2016

Before:  McKEE[1], *Chief Judge*, FUENTES and ROTH, *Circuit Judges*

(Filed: November 7, 2016)
_____

OPINION[*]
_____

---

[1] Judge McKee was Chief Judge at the time this appeal was submitted.  Judge McKee completed his term as Chief Judge on September 30, 2016.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Between 2006 and 2014, Plaintiff Jessica Herzfeld performed as an exotic dancer at the Gold Club in Philadelphia, a club owned by Defendant 1416 Chancellor (hereinafter referred to as "the Gold Club"). She signed two landlord/tenant leases, memorializing her arrangement with the club—the first in 2006 when she began and a second one in 2013. Shortly after she left the club, Herzfeld, on behalf of herself and a class of similarly situated dancers, commenced a wage-and-hour suit against the Gold Club. Arguing that the two leases contained binding arbitration clauses, the Gold Club moved to compel arbitration of Herzfeld's claims. The District Court denied that motion. Because we find that Herzfeld's claims are statutory and do not arise out of either lease, we will affirm.

## I.

At the time Herzfeld began performing at the Gold Club in 2006, she signed a contract, according to which she paid the Gold Club a certain amount of money per shift to "lease" its stage, in exchange for tips. This initial contract was lost, however, during a flood in January 2009.

For four years, between 2009 and 2013, Herzfeld continued to perform at the Gold Club without the existence of a signed contract. Finally, in August 2013, Herzfeld was asked to sign a second contract, entitled *Stage Rental /Licensce [sic] Agreement*. The circumstances under which Herzfeld was presented the contract are the subject of some dispute. Herzfeld testified that she was given the contract to sign in the middle of a night shift, at around midnight, after she had already paid a stage fee and had consumed two

2

glasses of wine. Additionally, she was told that she could not continue performing without signing the contract and that she could not bring it home to review the terms. The Gold Club contests the timing, alleging instead that Herzfeld would have been given the contract to sign before her shift started.

Importantly, the *Stage Rental/Licensce [sic] Agreement*, an error and typo-ridden landlord/tenant lease under which the Gold Club granted Herzfeld a license to use its stage, contained the following arbitration clause:

> If any dispute arises out of this agreement it shall be settled by arbitration in accordance with the rules and regulations of the American arbitration [sic] association [sic] in Philadelphia by a sole arbitrator made available through the American arbitration [sic] association [sic] which shall be final and conclusive and binding upon both parties. Licensor and licensee shall each pay their own costs and expenses of abrasion [sic] including but not limited to their own respective attorneys [sic] face [sic] if any.[2]

The Gold Club insists that the missing 2006 lease contained a similarly worded arbitration clause as a matter of company policy. Herzfeld and the then-managers of the Gold Club, however, do not recall the specifics of the prior agreement.

At issue in this appeal is whether Herzfeld is bound by the arbitration clauses contained in either of the two landlord/tenant leases she signed to perform at the Gold Club in order to vindicate her rights as an employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. CONS. STAT. § 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection

---

[2] J.A. 68–69.

Law ("WPCL"), 43 PA. CONS. STAT. § 260.1, *et seq.*, and state common law. The District Court held that Herzfeld is not. We agree.[3]

## II.

"We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate."[4] When, as here, the parties conducted discovery before filing a motion to compel, the summary judgment standard is applied.[5] Accordingly, we "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence."[6]

The Court need only answer two questions when deciding whether a matter must be submitted to arbitration: (1) "whether the parties have a valid arbitration agreement at all," and (2) "whether a concededly binding arbitration clause applies to a certain type of controversy."[7] The District Court arrived at its conclusion on the basis that the parties do not have a valid arbitration agreement, and simply assumed that the arbitration clause would otherwise apply to the dispute. We disagree on the latter point, and affirm the District Court's judgment without reaching the merits of the District

---

[3] The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction to hear this appeal pursuant to 9 U.S.C. § 16(a)(1)(A).
[4] *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010)).
[5] *Id.* at 776.
[6] *Id.* at 772 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)).
[7] *Puleo*, 605 F.3d at 178 (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)).

Court's decision on the enforceability of the arbitration clause, which implicate complicated and novel issues.[8]

We begin by making the simple observation that the *Stage Rental/Licensce [sic] Agreement* is, by its plain language, a landlord/tenant lease.[9] The arbitration clause contained therein expressly states that it applies only to "dispute[s] aris[ing] out of this agreement."[10] Herzfeld's wage-and-hour claims, however, do not arise out of the lease agreement. In fact, the agreement deliberately states that it "negate[s] any employment relationship."[11] Of course, an individual does not forfeit her rights as an employee under the FLSA simply by signing a cleverly drawn up contract,[12] but this language does support the conclusion that Herzfeld's wage-and-hour claims exist outside the confines of the *Stage Rental/Licensce Agreement*, and, consequently, are not subject to its arbitration clause.[13]

---

[8] We may affirm the District Court's judgment on any basis supported by the record. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[9] J.A. 68–69.

[10] *Id.* 69.

[11] *Id.* 68.

[12] *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945); *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 521 n.8 (3d Cir. 1988) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (3d Cir. 1981).

[13] The District Court reasoned that because Herzfeld contends that she is an employee in abrogation of the agreement that her claims do arise out of the agreement. We disagree. Whether Herzfeld is a covered employee and whether she is entitled to minimum wage and overtime under the FLSA and related state statutes are statutory questions that are not predicated on the terms of the lease agreements. *See Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ("courts should look to the economic realities of the relationship in determining employee status under the FLSA" rather than the contractually defined relationship). Herzfeld does not need to first dispute the validity of the lease agreement in order to bring her FLSA and related state claims. Similarly, we

5

Having thus concluded that the arbitration clause does not apply to Herzfeld's employment based claims, the Court need not address any of the other questions presented.[14]

**III.**

The District Court opinion presented many interesting and thorny questions of law concerning the enforceability of implicit collective-action waivers in the context of the Federal Arbitration Act. But we need not grapple with those issues today. In short, in an effort to limit its liabilities under labor-employment laws by designating its contracts with the exotic dancers as landlord/tenant leases, the Gold Club has likewise limited the scope of its arbitration clauses. The FLSA and its state counterparts cannot be so easily circumvented. The rights embodied in the FLSA—"minimum wages and maximum work hours"[15]—are absolute and unwaivable. For these reasons, we will affirm the District Court.

---

held in *Bell v. Se. Pa. Transp. Auth.*, 733 F.3d 490, 495–96 (3d Cir. 2013), that the plaintiffs do not need to arbitrate their FLSA claims according to their collective bargaining agreement ("CBA") because their FLSA claims are independent of the CBA terms. In that case, as is true here, whatever the arbitrator would decide regarding the payments due to the plaintiffs under the CBA would be irrelevant to their FLSA claims.

[14] The Gold Club also appeals from two other holdings: (1) that it did not prove by clear and convincing evidence under the Pennsylvania lost instrument rule that the 2006 lease agreement had an enforceable arbitration clause; and (2) that the 2013 arbitration clause cannot be applied retroactively to cover Herzfeld's entire employment history, starting in 2006. Even assuming that the District Court erred in both of these determinations, the Gold Club would still not prevail because Herzfeld's claims do not arise out of either lease agreement and, consequently, are not subject to either arbitration clause.

[15] *Coventry*, 856 F.2d at 521 n.8.