**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1101
_____

TYMECO JONES, IESHA BULLOCK, and TEAIRRA
PIZARRO, on behalf of themselves and those similarly
situated

v.

JOHN DOES 1-10;
SCO SILVER CARE OPERATIONS LLC d/b/a ALARIS
HEALTH AT CHERRY HILL
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-13-cv-07910)
District Judge: Honorable Noel L. Hillman
_____

Argued: November 16, 2016

Before: AMBRO, CHAGARES, and FUENTES, *Circuit
Judges*

(Opinion filed: May 18, 2017)
_____

Stuart A. Weinberger, Esq. [Argued]
Goldberg & Weinberger
630 Third Avenue
18th Floor
New York, NY 10017

*Counsel for Appellant*

Matthew D. Miller, Esq. [Argued]
Justin L. Swidler, Esq.
Swartz Swidler
1101 Kings Highway North
Suite 402
Cherry Hill, NJ 08034

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Plaintiffs, Tymeco Jones, Iesha Bullock, and Teairra Pizzarro, are certified nursing assistants who bring this action against their employer, SCO Silver Care Operations ("Silver Care") for violations of the Fair Labor Standards Act ("FLSA") and related New Jersey state wage and hour laws. The plaintiffs claim that Silver Care underpaid them for overtime in two ways. First, Silver Care failed to include certain hourly wage differentials in the calculation of the

plaintiffs' regular rate of pay, resulting in illegally low overtime rates. Second, Silver Care deducted plaintiffs' half-hour meal breaks from their total hours worked, even though they often worked through those breaks. A year after the plaintiffs filed their lawsuit, but before any discovery took place, Silver Care moved to dismiss or to stay the proceedings pending arbitration, citing the arbitration clause in the governing collective bargaining agreement ("CBA"). The District Court denied the motion to dismiss or to stay pending arbitration. Defendant Silver Care appeals, contending that both overtime claims must first be submitted to arbitration to resolve disputed interpretation of the CBA, including the definition of the wage differentials and policies concerning the meal breaks. For the reasons set out below, we will affirm the decision of the District Court.

## I. Background

The plaintiffs are employed at an assisted living facility, which was bought by Silver Care in 2007. The terms of their employment are governed by a CBA, negotiated by the nurses' union at the time of the purchase in 2007. This agreement lays out, among other things, wages, raises, breaks, and a grievance procedure that directs all disputes and complaints arising under the CBA to arbitration. Together, the three plaintiffs bring underpayment of overtime claims on their own behalf and on behalf of a class of nursing assistants who have worked at the nursing home at any time between December 31, 2010 and December 31, 2013. Their allegations are twofold: First, though plaintiffs are paid wage differentials, an additional $1.25 an hour to $3.00 an hour to account for shift premiums and raises, these differentials are not included in their regular rate of pay when overtime pay is

3

calculated. Second, plaintiffs' 30-minute meal breaks are automatically deducted from total time worked even though they often need to work through those breaks during night shifts. Briefly summarized below are the facts relevant to each of these two claims, followed by the procedural history.

### A. Exclusion of Wage Differentials in Overtime Calculation

Nursing assistants are paid a base rate of $10 to $14 an hour. In addition to these base rates, they may also be paid some or all three types of differentials: (1) "shift differentials"—an additional $2.50 an hour or $3.00 an hour, depending on the time and day of the shift; (2) "raise differentials"—an additional $1.25 an hour to those who received a certain type of raise; and (3) "frills differentials"— an additional $1.00 an hour or $1.60 an hour for nursing assistants who elected to forgo certain benefits. Whereas nursing assistants are compensated for overtime at one and a half times their base rate plus frills differential, plaintiffs here allege, and have submitted paystubs to demonstrate, that the shift differentials and raise differentials are not included. Consequently, the plaintiffs contend that they are undercompensated for overtime, which should be at one and a half times their all-in hourly rate during the regular work period.

### B. Uncompensated 30-Minute Meal Breaks

Under the CBA, nursing assistants who are scheduled for eight-hour shifts are entitled to two paid 15-minute breaks and one unpaid 30-minute meal break per shift. The plaintiffs allege that nursing assistants who work during the night shifts

4

"rarely, if ever" took an uninterrupted meal break because those shifts are chronically understaffed.[1] For example, whereas each nursing assistant is typically responsible for twelve to seventeen patients during the day and evening shifts, a nursing assistant on a night shift would be responsible for around thirty patients. In fact, the plaintiffs allege that, due to the staff shortage, the night shift supervisors do not schedule meal breaks for the night shift nursing assistants, and that when they do eat, they do so at the nurse's station, rather than in the break room, in order to hear the call bell alerting them to patients requiring care. Despite the frequent interruptions and restrictions, the plaintiffs allege that the 30-minute meal breaks are automatically deducted from their total hours worked. Consequently, the plaintiffs allege that they are not being paid for all the hours worked, including overtime for those weeks in which they worked more than forty hours.

### C. Procedural History

The plaintiffs filed suit in December 2013. Silver Care moved to dismiss the complaint, which motion was denied when the plaintiffs filed an amended complaint. Silver Care subsequently moved to dismiss the amended complaint, which was granted as to the plaintiffs' claims seeking injunctive relief, but denied as to the claims seeking monetary damages. Thereafter, the plaintiffs moved to conditionally certify their suit as a collective action. Silver Care opposed the motion for conditional certification and moved to dismiss or to stay the proceedings pending arbitration. The District Court granted conditional certification and denied Silver

---

[1] A 116.

5

Care's motion to dismiss or stay proceedings pending arbitration, holding that the plaintiffs' FLSA claims do not arise out of or implicate the CBA. Silver Care subsequently moved for reconsideration, which was also denied. Silver Care appealed.[2]

## II. Discussion

The main issue on appeal is the applicability of the arbitration clause in the CBA to each of the plaintiffs' FLSA overtime claims. We begin by examining the relevant legal framework before turning to the plaintiffs' two claims.

### A. Legal Framework

Whether and when a plaintiff's FLSA claims can be covered by an arbitration clause in a CBA is subject to a two-prong test. A court may compel arbitration of a plaintiff's

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 to adjudicate the FLSA claims and under 28 U.S.C. § 1367 to consider the associated state law claims. The District Court's order denying Silver Care's motion to dismiss or to stay pending arbitration under 9 U.S.C. § 3 is immediately appealable under 9 U.S.C. § 16(a)(1). *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 628 (2009). Our review of the arbitrability of the plaintiffs' claims is plenary. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362-63 (3d Cir. 2007) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999)). We review the District Court's denial of the motion for reconsideration for abuse of discretion. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016).

6

federal statutory claim when (1) the arbitration provision clearly and unmistakably waives the employee's ability to vindicate his or her federal statutory right in court; and (2) the federal statute does not exclude arbitration as an appropriate forum.[3] Even if no clear or unmistakable waiver exists, however, we have held that arbitration may still be compelled if the plaintiff's FLSA claim "depends on the disputed interpretation of a CBA provision," which dispute must "first go to arbitration—through the representative union—before [the employee may] vindicat[e] his or her rights in federal court under the FLSA."[4] We established this narrow rule to prevent a plaintiff from circumventing applicable statutes of limitations and contractually binding grievance procedures set out in a CBA. Tellingly, we have applied it to dismiss a plaintiff's FLSA claim in only one case, *Vadino v. A. Valey Engineers*.[5]

In *Vadino*, the plaintiff-employee brought two claims.[6] First, the plaintiff alleged that the employer breached the CBA by paying him less than the wages due to a journeyman under the CBA.[7] Second, he alleged that the employer breached the overtime provision of the FLSA because he was not paid for overtime hours at one and a half times the journeyman rate to which he claimed that he was entitled under the CBA.[8] In short, both claims centered on his

---

[3] *14 Penn Plaza v. Pyett*, 556 U.S. 247, 260 (2009).
[4] *Bell v. Se. Pa. Transp. Auth.*, 733 F.3d 490, 494 (3d Cir. 2013).
[5] 903 F.2d 253 (3d Cir. 1990).
[6] *Id.* at 255.
[7] *Id.* at 257.
[8] *Id.*

7

argument that the CBA promised him higher wages than what he actually received. Consequently, because his FLSA claim was "inevitably intertwined with the interpretation or application of [the] collective bargaining agreement,"[9] we held that he must first resolve his contractual dispute according to the internal grievance procedure set out in the CBA.[10] He could vindicate his federal statutory right in court only after resolution of his CBA claim.[11]

By contrast, we held more recently in *Bell v. Southeastern Pennsylvania Transportation Authority* that the plaintiffs were not required to resolve any contractual disputes through arbitration before bringing their FLSA claim in federal court because their FLSA claim was completely independent of any interpretation of the CBA.[12] In that case, the plaintiffs, who worked as bus drivers and trolley operators, claimed that they should have been compensated for time spent performing vehicle inspections before the start of their daily trips.[13] The defendant argued that this FLSA claim depended on "whether the provisions of the CBA governing compensation for reporting time prior to the start of daily schedules include payment for pre-trip inspections."[14] That argument failed, however, because the employees did not claim that "they are entitled to additional payment under a CBA."[15] Rather, "resolution of the FLSA claim requires a

---

[9] *Bell*, 733 F.3d at 494 (describing *Vadino*).
[10] *Vadino*, 903 F.2d at 266.
[11] *Id.*
[12] *Bell*, 733 F.3d at 491.
[13] *Id*.
[14] *Id.* at 495 (internal quotation marks omitted).
[15] *Id.*

factual determination of the amount of time Operators are required to work prior to their scheduled start, and a legal determination regarding whether this time is (1) compensable and (2) subject to the overtime provisions of the FLSA."[16]

In summary, to the extent that an employee may be compelled to arbitrate his or her FLSA claims at all, the arbitration clause in the CBA must clearly and unmistakably state so. However, even where an arbitration clause does not contain a clear and unmistakable waiver of a plaintiff's right to a judicial forum, a plaintiff may nonetheless be compelled to arbitrate disputes over interpretations of the CBA, if the FLSA claims depend on such contractual disputes.

Here, Silver Care does not dispute that the arbitration provision lacks a clear and unmistakable waiver of the employees' right to vindicate their FLSA claims in federal court.[17] Instead, Silver Care argues that this case must be stayed pending arbitration because both of the plaintiffs' FLSA claims depend on disputed interpretations of the CBA. For the following reasons, we disagree.

---

[16] *Id.*

[17] In fact, the arbitration clause defines a grievance "as a dispute or complaint arising between the Union and the Employer under this CBA or the interpretation, application, performance or any alleged breach thereof." A 189. It does explicitly provide that "[a]ll claims that an employee has been discriminated against . . . in violation of applicable federal, state or local law shall be subject to the grievance and arbitration procedure as the sole and exclusive remedy for violations." A 191. But there is no similar provision for FLSA disputes.

### B. Miscalculation of Overtime Rate Claim

Silver Care argues that the plaintiffs' FLSA claim alleging miscalculation of the overtime rate rests upon a dispute over an implicit term of the CBA regarding whether the differentials already include a payment for overtime. Silver Care claims that during the collective bargaining process, when it negotiated to grandfather in some of the differentials, it also came to an agreement with the nurses' union that the additional differential amounts would already include overtime.[18] For example, Silver Care asserts that what appears to be a "$3.00 per hour weekend differential is a gross amount comprised of the $2.00 per hour differential and an extra $1.00 per hour in overtime premium . . . regardless of whether [the weekend shift] was worked in excess of 40 hours per week."[19] This, Silver Care posits, constitutes a dispute over an implicit term of the CBA that must first be sent to arbitration before a court can decide whether the plaintiffs have a claim under the FLSA.[20]

Silver Care's argument fails because the plaintiffs' overtime claim is governed by the FLSA. Unlike the dissent, we believe that the statute requires us to bypass how the CBA breaks down the pay differentials, and look only to whether these pay differentials fit into the statutory definition of remuneration that must be included in the calculation of an employee's regular hourly rate of pay.

---

[18] Appellant's Br. at 44.

[19] *Id.* at 41.

[20] *Id.* at 41-42.

The FLSA requires qualifying employers to pay "at a rate not less than one and one-half times the regular rate" to employees for hours worked in excess of forty hours a week.[21] The regular rate of pay is defined as "all remuneration for employment paid to, or on behalf of, the employee," and the statute explicitly sets out a limited list of eight exceptions to this rule of "all remuneration."[22] We have held that these statutory exclusions are exclusive. "[A]ll remuneration for employment paid which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is [to be] determined."[23] Furthermore, these statutory exclusions "are narrowly construed, and the employer bears the burden of establishing [that] an exemption [applies]."[24]

In other words, whether the wage differentials should be included in the regular rate of pay depends not on any labels assigned to them by the CBA, but on whether they fit into one of the statutory exclusions. An employee's "regular rate is a readily definable mathematical calculation that is explicitly controlled by the FLSA."[25] As the Supreme Court puts it, the regular rate "is not an arbitrary label chosen by the

---

[21] 29 U.S.C. § 207(a)(1).

[22] 29 U.S.C. § 207(e).

[23] *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016) (quoting 29 C.F.R. § 778.200(c)).

[24] *Id.* (quoting *Minizza v. Stone Container Corp. Corrugated Container Div. E. Plant*, 842 F.2d 1456, 1459 (3d Cir. 1988) (internal citations omitted)).

[25] *Id.* (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424-45 (1945)).

parties; it is an *actual fact.*"[26]  Once amount of wages actually paid is known, "the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts."[27]  Therefore, whether the CBA designates $2.00 of the $3.00 shift premium for working on Sunday as "regular pay" and $1.00 as "overtime" is completely irrelevant to a court's analysis of the proper overtime payment owed to the plaintiffs.  A court determines the regular hourly rate of pay "by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."[28]  This calculation can be done simply by looking at a paystub.

In conclusion, the plaintiffs' miscalculation of overtime rate claim does not depend on any disputed term of the CBA, and, therefore, need not be sent to arbitration.

## C.     Lack of Mealtime Compensation Claim

Silver Care argues that the plaintiffs' second FLSA claim—that their meal breaks should be credited towards hours worked—depends on disputed practices under the CBA, which must first be resolved by an arbitrator.[29]

---

[26] *Walling*, 325 U.S. at 424 (emphasis added).

[27] *Id.* at 425.

[28] 29 C.F.R. § 778.109.

[29] Contrary to the dissent's characterization, the plaintiffs clearly state that their "claim for overtime wages due to unlawful meal break deductions is based **only** on their

12

Because we find that the alleged disputed practices enumerated by Silver Care are simply factual disputes, we hold that arbitration of the plaintiffs' second claim is also not necessary.

The FLSA itself does not define what are compensable work hours. Instead, the Wage and the Hour Division of the Department of Labor issued a number of regulations providing employers and employees alike guidance on how it would implement and enforce the law. One such regulation provides that employers need not compensate employees for bona fide meal periods because those are not considered to be compensable worktime.[30] The regulation defines a bona fide meal period as rest periods during which "[t]he employee must be completely relieved from duty for the purpose of eating regular meals," but "[t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."[31]

As the dissent alludes, this regulation does not have the force of law, however, and merely "constitute[s] a body of experience and informed judgment to which courts and

---

statutory rights under the FLSA." Appellees' Br. at 17. They emphasized that they "do **not** claim that [Silver Care] breached a contractual right provided by the CBA but instead violated the FLSA and DOL regulations, which require employers to pay employees 1.5 times their regular rates for all hours worked in excess of 40 hours including meal breaks that are not *bona fide*." *Id.* (citing 29 U.S.C. § 207; 29 C.F.R. § 785.18) (emphasis in original).

[30] 29 C.F.R. § 785.19(a).

[31] *Id.*

13

litigants may properly resort for guidance."[32] And we were so guided by it in *Babcock v. Butler County*, in which case we recognized that the FLSA does require employees to be compensated for meal periods if they are "primarily engaged in work-related duties during" those times, adopting the so-called predominant benefit test.[33] We explained that the "predominant benefit test is necessarily a fact-intensive inquiry," where the "essential consideration . . . is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal."[34] Furthermore, one of the factors we look to, as part of this predominant benefit test, is the characterization of the mealtime break in the CBA.[35] In short, Silver Care is subject to a statutory obligation to compensate the plaintiffs for time spent during meal periods if the plaintiffs, as they allege, are primarily engaged in work-related duties during these breaks.

Silver Care does not argue that the plaintiffs' mealtime compensation claim is a contractual dispute, as the dissent posits. It recognizes that the plaintiffs' mealtime compensation claim is based on the FLSA and how compensable work time is defined under that statute. Instead, it relies on our consideration of the characterization of the meal break in the CBA in *Babcock* to support its contention that "[i]n order to determine . . . to whom the benefit of the meal break inures, there must be an interpretation of the

---

[32] *Babcock v. Butler Cty.*, 806 F.3d 153, 157 n.7 (3d Cir. 2015) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).
[33] *Id.* at 156.
[34] *Id.* at 157.
[35] *Id*. at 158.

CBA."[36]  Among the disputed "interpretations" that Silver Care seeks to arbitrate are: (1) the actual length of the meal breaks—Silver Care alleges that different sections within the nursing home sometimes combine the unpaid meal break with the paid breaks, extending meal breaks to 45 minutes or an hour, for which only 30 minutes are unpaid;[37] (2) "the practices, customs and usages of the parties with respect to what happens if an employee allegedly is interrupted during a meal break"[38]—whether the interrupted time is normally "considered part of the paid portion of the break or the unpaid portion of the break?;"[39] and (3) practices under the CBA regarding the types of restrictions, if any, placed upon the employees during their meal breaks, "what are considered interruptions of the meal breaks, and how interruptions are handled during the meal breaks."[40]

All of these so-called disputed "interpretations" of the CBA, however, are factual questions—length of meal breaks, types of interruptions, how they were handled, and whether the plaintiffs ever received compensation due to these interruptions.[41]  Silver Care cannot rely on *Babcock* to

---

[36] Appellant's Br. at 48.

[37] *Id.*

[38] *Id.* at 49

[39] *Id.*

[40] *Id.* at 50.

[41] Silver Care's attempt to distinguish these inquiries from factual disputes is unpersuasive.  In its reply brief, Silver Care states that "making simple factual determinations of whether the meal break was interrupted and whether the employee worked during the meal break" is not sufficient, because "there first has to be a determination made, whether, if there

15

transform these factual disputes inherent to any FLSA claim into disputes over provisions of the CBA subject to arbitration.

In *Babcock*, we determined that the meal period at issue there inured primarily to the benefit of the employees by looking at both the facts and the CBA.[42] First, we found that though the plaintiffs faced some restrictions during their meal breaks, "on balance, these restrictions did not predominantly benefit the employer," particularly because the plaintiffs could "request authorization to leave [the workplace] for their meal period and could eat lunch away from their desks."[43] Second, we separately considered the CBA, which we thought was favorable for the employer's position, because the CBA "provide[d] corrections officers with the benefit of a partially-compensated mealtime and mandatory overtime pay if the mealtime is interrupted by work."[44]

Notably, our consideration of the CBA was limited to reading the text. We did not collapse the factual inquiry and the consideration of the CBA into one. Nor could we. To

---

is an interruption, the interruption is considered part of the paid portion of the break or the unpaid portion of the meal break." Appellant's Reply Brief at 11. Silver Care never makes clear why it matters to an FLSA claim how the CBA would categorize the meal time interruptions. Either the plaintiffs received compensation for interruptions during their meal time, or they did not. The plaintiffs' claim is based on the FLSA rather than the CBA.

[42] *Babcock*, 806 F.3d at 158.
[43] *Id.* at 157.
[44] *Id.*

characterize an essentially factual inquiry as a dispute of practices or custom under the CBA such that arbitration is necessary would be to circumvent Supreme Court precedent that a plaintiff cannot be compelled to arbitrate his or her federal statutory claims without a clear and unmistakable waiver.[45]

Here, Silver Care has not pointed to any disputes over the *text* of the CBA, which provides that "meal periods and breaks shall be free and uninterrupted, and employees shall not be on call. However, in emergencies, employees are expected to respond."[46] Instead, Silver Care raises only disputes about what actually happens during these meal breaks. Thus, Silver Care's reliance on *Babcock*, to transform its factual disputes into contractual ones subject to the arbitration clause, is misplaced.

\* \* \*

In sum, neither of the plaintiffs' FLSA claims depend on disputed interpretations of CBA provisions such that arbitration is necessary.[47]

---

[45] *Pyett*, 556 U.S. at 260.

[46] A 171.

[47] The plaintiffs also raised some threshold questions regarding whether the arbitration clause in the CBA is enforceable at all. We need not address these questions because, even assuming the arbitration clause is enforceable, arbitration is inappropriate in this case where the plaintiffs' FLSA claims do not depend upon any disputed interpretation of the CBA.

17

### III. Conclusion

For the foregoing reasons, we will affirm the District Court's denial of Silver Care's motion to dismiss or to stay the proceedings pending arbitration.

Tymeco Jones, et al v. SCO Silver Care Operations LLC
No. 16-1101

_____

AMBRO, <u>Circuit Judge</u>, dissenting

As I read the Majority's opinion, it considers plaintiffs' two claims brought under the Fair Labor Standards Act ("FLSA") (a pay-differentials claim and a meal-break claim) as independent from the applicable collective bargaining agreement ("CBA"). Because I believe both of those claims rest on terms covered by the CBA, and because I believe our holding in *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990), controls, they should first be arbitrated as the parties had agreed.

*Vadino* involved a union member challenging his pay rate and overtime compensation under the FLSA. The relevant CBA between the union and Vadino's employer set out various pay grades given the worker's title and job qualifications. Using that pay scale, Vadino argued that he was entitled to receive a higher wage and thus should have received overtime commensurate with it. The CBA also provided for a grievance process that culminated in arbitration.

Although Vadino's claim for overtime implicated the FLSA, we held that when a dispute arises "as to the correct wage rate under a [CBA]" that also involves a "claim under the overtime provision of the FLSA, the procedure we envision is to decide the contract interpretation issue through the grievance procedure to arbitration." *Id.* at 266. "Concurrent with that, the employee may bring a FLSA claim, but the FLSA overtime claim would be dependent upon the resolution . . . of the contract interpretation issue." *Id.* That holding applies to the case before us.

1

First, a central dispute between the parties involves the "correct wage rate" under the CBA: the pay differentials. Plaintiffs assert that the periodic increase in their weekly wages from the pay differentials was not reflected in their regular rate of pay for the purposes of calculating overtime. Silver Care, however, contends that overtime for those pay differentials was reflected in the pay differentials themselves (for example, under the implied terms of the CBA plaintiffs were not given the $3 per hour increase they received but rather a $2 per hour increase, and the extra dollar they received in wages was built-in overtime payment). The parties clearly disagree as to what comprised those pay differentials and what was the correct pay-differential *wage*. I part ways with my colleagues that this dispute is "completely irrelevant to a court's analysis of the proper overtime payment owed to the plaintiffs." If anything, what overtime is owed to plaintiffs depends on interpreting what the parties agreed regarding the breakdown of the pay differentials and what component of them is considered compensable wages for calculating overtime. Under *Vadino*, that interpretation first should be made by an arbitrator per the arbitration provision in the CBA. Because these claims involve disputed interpretations of the CBA, this case is *not* like *Bell v. Southeastern Pennsylvania Transportation Authority*¸733 F.3d 490 (3d Cir. 2013), in which we held that FLSA claims need not be arbitrated so long as they are completely independent of any interpretation of the applicable CBA.

Second, plaintiffs' claim that they should be compensated for work performed during unpaid meal breaks also falls within the CBA. The FLSA makes no mention of meal breaks. Instead, the right to uninterrupted meal breaks is created by the CBA, providing that "meal periods and breaks shall be free and uninterrupted, and employees shall not be on call. However, in emergencies, employees are

2

expected to respond." Plaintiffs argue that the unpaid, uninterrupted breaks to which they were entitled in the CBA were in fact interrupted and they should be compensated for the work performed during that time. But their FLSA claim for compensation depends entirely on a breach-of-contract claim. If Silver Care did not violate the terms of the CBA by interrupting their guaranteed unpaid breaks, there would be no cause of action for relief. Thus the alleged breach of the CBA is a claim the parties agreed to arbitrate.

Furthermore, the text of the CBA is unclear as to what constitutes an interruption. Would being understaffed, as plaintiffs allege, be an emergency under the CBA? And if interrupted, could plaintiffs count that as one of their two interrupted breaks and take an uninterrupted break later? These questions go to the heart of what the parties intended when entering into the CBA. Because this FLSA claim is predicated on a breach-of-contract claim that also warrants interpretation of the CBA, the parties' arbitration agreement should be honored and the issue resolved by an arbitrator.

As the claims before us require in my view an interpretation of the CBA before proceeding to the alleged FLSA violations, and CBA interpretations require arbitration here, I respectfully dissent.